IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **CHARLES E. HILL & ASSOCIATES, INC.,**<br><br>    v.<br><br>**AMAZON.COM, INC.; AMERICA ONLINE, INC.; BARNESANDNOBLE.COM, INC.; BUY.COM, INC.; EBAY, INC.; EDDIE BAUER, INC.; THE GAP, INC.; INTERNATIONAL BUSINESS MACHINE CORP.; INTIMATES BRANDS INC.; J CREW GROUP, INC.; L.L. BEAN, INC.; LANDS' END, INC.; LIMITED BRANDS, INC.; QUIXTAR, INC.; RECREATION EQUIPMENT INC.; SEARS ROEBUCK AND CO.; SPIEGEL INC.; AND WILLIAMS-SONOMA, INC.** | **Civil Action No. 2:02-CV-0186 TJW** |

**DEFENDANT AMERICA ONLINE, INC.'S MOTION *IN LIMINE* #1:**

**TO PRECLUDE THE TESTIMONY OF HILL'S
DAMAGES EXPERT RICHARD A. DONALDSON**

Defendant America Online ("AOL") respectfully requests that the Court preclude *in limine* Hill from introducing into evidence, or otherwise raising in the presence of the jury, the testimony of Hill's damages expert, Mr. Richard A. Donaldson, as it applies to AOL's three accused websites at issue – www.aolshopdirect.com; www.in-store.com; and www.aolshop.com. The two issues presented by this motion are quite straightforward.

First, given the utter lack of disclosure in his expert report, Mr. Donaldson should be precluded from providing testimony for any damages based on purported infringement of AOL's www.in-store.com and www.aolshop.com websites and, in addition, for any damages occurring

after 2001 for all three websites.  Despite having all of AOL's damages-related documents for many months and the 30(b)(6) testimony of AOL's witnesses related to all three accused websites, in his expert report, Hill's damages expert curiously chose only to focus on one of the accused website (*i.e.*, www.aolshopdirect.com, a website that became defunct in 2003) and only reported damages based on "revenues" occurring prior to 2002.  And during his deposition Mr. Donaldson was unable to provide any additional information regarding damages for the post-2001 period.  AOL is simply left to guess what, if any, damages analysis and numbers Mr. Donaldson intends to present at trial with respect to AOL's www.in-store.com and www.aolshop.com websites and for the post-2001 period.  Trial by ambush simply cannot be condoned on this point and Mr. Donaldson should be precluded from testifying at trial regarding issues of damages not addressed in his report.

The second issue is also easy.  With respect to the purported damages that Mr. Donaldson actually did present in his report – damages occurring for the years 1998 through 2001 for the single, now defunct, www.aolshopdirect.com website – Mr. Donaldson's analysis is admittedly flawed and, in any event, irrelevant to any damages that Hill could be entitled to collect against AOL.  In addition to not even stating in his report or knowing in his deposition which AOL websites have been accused, the date of operations for those websites, and which patents were at issue against AOL, Mr. Donaldson repeatedly admits he was "confused" and had "difficulty" with AOL's revenues, and he quickly acknowledged that his analysis was flawed and overstated the damages amounts.  With such lack of support and reliable methods, Mr. Donaldson cannot hope to pass the standard for testifying under Rule 702 and he should be precluded from doing so.

Beyond that, here it is not disputed that AOL first became aware of the '649 patent on May 17, 2002 when AOL received a letter from Hill mentioning the existence of the patent. Hill's infringement assertions are necessarily based on a theory of indirect infringement and, under such a theory, AOL cannot be held liable for any infringement prior to the time that AOL became aware of the patent. That is, under a theory of contributory infringement or inducement, Hill must show that AOL actually knew about the patent in order for liability to be found. Thus, the only relevant and applicable period for damages with respect to AOL's purported infringement is post-May 17, 2002. But, as noted, for these years Hill's damages expert provides not damages at all and, curiously, he even indicates in his report that damages incurred in those years are "N/A." Any damages purported to have been accrued by AOL's infringement prior to 2002 would be irrelevant in light of Hill's indirect infringement theory and his pre-2002 damages analysis should be excluded for that reason as well.

## ARGUMENT

### A. Mr. Donaldson Should Be Precluded From Testifying Regarding Matters Not Addressed in His Expert Report – Damages Accruing Post-2001

In his expert report, Mr. Donaldson failed to address two issues (1) damages for any of the accused websites occurring after the year 2001; that is, there is nothing in his expert report supporting or alleging damages for the years 2002 through the present and (2) damages with respect to two of the three accused websites – www.in-store.com and www.aolshop.com. Having failed to address these issues, Mr. Donaldson should be precluded from testifying regarding them during trial.

With respect to the first point, the totality of the damages expressed for AOL is contained in Schedule 8A of Mr. Donaldson's report entitled "Defendant Total Damages." *See* Schedule 8A, Confidential Exhibits A & B (respectively reflecting an initial damages assessment included

3

with his report and a revised assessment based on an admitted error that was produced during his deposition) . In that table, Mr. Donaldson stated that AOL's damages for years 2002, 2003, 2004, and 2005 were "N/A". He did not explain why the columns were "N/A." Mr. Donaldson also included a "Total" column that listed the total damages assessed against each defendant. The "Total" column for AOL did not include any damages for 2002, 2003, 2004 and 2005, but rather only included the sum of the damages purportedly accrued for the years 1998 through 2001.

With respect to the second point, Mr. Donaldson does not even mention the www.in-store.com and www.aolshop.com websites in his report and provides no damages with respect to those websites. None. Indeed, www.in-store.com commenced operations in September of 2004 and www.aolshop.com in July of 2003, well after 2001 which is the last year damages are reported by Mr. Donaldson.

Mr. Donaldson's failure to provide any post-2001 damages or damages for the www.in-store.com and www.aolshop.com certainly cannot be blamed on AOL. All three of the accused websites were identified by Hill in its Preliminary Infringement Contentions back in November of 2004. In February 2005, AOL produced its financial documents from 1999-2004 that relate to the accused websites. In September 2005, AOL supplemented its production of financial documents to include its 2005 financials that relate to the accused websites. Approximately one month before Mr. Donaldson served his damages report, Hill deposed two AOL 30(b)(6) witnesses, Rudolf Thun and Michael Jenkins, on the issue of damages. Although AOL's financial documents were produced and Hill deposed AOL's 30(b)(6) damages witnesses well before Mr. Donaldson prepared his report on damages, Mr. Donaldson still failed to include information in his expert report regarding any damages resulting from AOL's activities for years

4

2002, 2003, 2004, and 2005 or damages with respect to the www.in-store.com and

www.aolshop.com websites.

Mr. Donaldson also missed the opportunity to apprise AOL of any new damages analysis during his deposition conducted on December 15, 2005 and further was unable to correct the numerous errors with respect to numbers he did provide:

> **Q.** So does your report reflect damages for the accused web sites, the AOL accused web sites?
> **A.** No. I think that was part of the difficulty. And I mention in my report that there is difficulty with the documents that we had received, and <u>I understand that subsequent information has become available that clarifies some of that</u>. And it may indicate that revision of the accused revenue is going to be required. I am not in a position right now to say what that revision should be. I know what Mr. Jackson has concluded. And given his report and explanation, I can -- have gone back and some of the things that I could not understand I have a better understanding of now, but I still have not -- am not in a position to just accept what Mr. Jackson has proposed, but I also understand that changes will be required in the revenue base that I have included in my report as filed because of the lack of understanding of what some of these documents actually show.
> **Q.** And you said subsequent information has been made available. Can you explain what subsequent information you're referring to?
> **A.** Mr. Jackson's report and his explanation of what some of the documents purportedly show, which just based on the documents themselves, I would not have come to the same conclusion, but if he is correct in that -- and I have no reason to doubt that he's not -- it would indicate that I would want to supplement my report to reflect a <u>different sales base</u>.

Donaldson Deposition Tr. at 292:14 – 293:17, Confidential Exhibit C.

There is no "subsequent information." Long before his report Mr. Donaldson had all the relevant AOL financial documents and Hill's lawyers had access to AOL fact witnesses. If there was a "different,"[1] "more accurate,"[2] and "correct"[3] sales base for the www.aolshopdirect.com website, and if there were additional websites and years that Mr. Donaldson wanted to consider in his analysis, then he needed to include this information in his expert report or, at a minimum, tell AOL about this during his deposition. And during questioning at his deposition a month

---

[1] *See* Donaldson Deposition T. at 235:8-16, 293:11-17, and 325:9-17.
[2] *See* Donaldson Deposition T. at 234:14-235:2 and 329:24-330:4.
[3] *See* Donaldson Deposition T. at 325:9-17.

5

later on December 15, 2205, Mr. Donaldson was completely unable to identify what he described as a "different," "more accurate," and "correct" sales base for the www.aolshopdirect.com website, damages based on www.aolshop.com and www.in-store.com, or damages post-2001. Mr. Donaldson also failed to supplement his report since his deposition, and, to the extent any supplementation is planned now, it is simply too late on the eve of trial armed with no additional facts for Mr. Donaldson to provide wholly new damages theories and numbers.[4]

Having no expert report or deposition testimony relating to AOL's www.in-store.com and www.aolshop.com websites and for the post-2001 period, Mr. Donaldson must be precluded from addressing these issues at trial.  *See* Rule 26(a)(2)*, Federal Rule of Civil Procedure; Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998); *Asia Strategic Inv. Alliances v. General Elec. Capital Servs.*, 173 F.R.D. 305, 307 (D. Kan. 1997); *Pucci v. Litwin*, No. 88 C. 10923, 1993 WL 405448, at *2 (N.D. Ill. Oct. 4, 1993) ("The court therefore limits expert testimony…to subjects adequately disclosed in expert discovery").

**B.    Mr. Donaldson Should Be Precluded From Testifying Regarding Matters That Lack Sufficient Facts or Support and Are Not Otherwise Relevant – Damages Accruing From 1998-2001**

   **1.    Rule 702 Precludes Mr. Donaldson's Testimony**

An expert is authorized to provide testimony at trial "if the testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods."  F.R.E. 702.  Mr.

---

[4] To the extent Hill seeks to have the Donaldson report supplemented at this time, AOL would vigorously oppose such a supplementation.  It is not possible for AOL to obtain full disclosure from Mr. Donaldson regarding any damages that Hill might allege occurred after 2001.  Any disclosure beyond what is expressly contained in Mr. Donaldson's expert report would prejudice AOL at this late stage and would disrupt AOL's trial preparation.  On this point, we note what Hill has said in its Motion to Bar the Testimony by AOL's Assistant General Counsel:  "Hill would be unfairly prejudiced if it had to interrupt its final trial preparation to depose this new witness, and Hill would not have adequate time to address any new issues his eleventh-hour testimony might raise."  Hill's Motion at 1.  While Hill's motion presents a different issue that AOL will respond to, AOL agrees with the premise of Hill's assertion.

Donaldson has asserted that AOL must pay millions of dollars, but Mr. Donaldson has failed to gather the facts and data required to support his opinion. Even Mr. Donaldson himself indicated in his deposition that his analysis of AOL's revenue from 1998-2001 is inaccurate. For this reason, Mr. Donaldson's testimony with respect to AOL's damages from 1998-2001 should be precluded.

The first problem with Mr. Donaldson's expert report is that he simply got the numbers wrong. As noted above, he first produced a Schedule A that alleged total damages for AOL (for years 1998 through 2001) of $3.3 million. *See* Schedule A, Confidential Exhibit A. Then, the morning of his deposition, he produced a revised Schedule A because he had transposed some numbers in his table which resulted in the alleged damages for AOL jumping to $5.6 million. *See* Donaldson Deposition Transcript at 14:21-15:3, Confidential Exhibit C; Revised Schedule A, Confidential Exhibit B. Leaving aside for a moment Mr. Donaldson's creative accounting methods, perhaps more remarkable is that he arrived at these numbers without determining which AOL websites were accused of infringement and the dates of operation of those websites. In his deposition, Mr. Donaldson stated that he was confused about which AOL websites were accused of infringement:

> **Q.** Are you aware of which AOL websites Hill has accused of infringing the '649 patent?
> **A.** I think there was some confusion, clearly at my end, as to exactly what was -- what was covered and trying to understand what was involved in the documents that were produced. It was very difficult to understand.

Donaldson Dep. Tr. at 292:7-13, Confidential Exhibit C.

His confusion is not justified. On February 9, 2005, in an interrogatory response, AOL identified the period of operation for each accused website. *See* Excerpt, Confidential Exhibit D. Despite this, in his expert report, Mr. Donaldson included revenue for approximately 23 months prior to the operation of any AOL accused website. The first accused AOL website –

www.aolshopdirect.com – came into operation in December of 1999, yet Mr. Donaldson calculated damages owed to Hill for the year 1998 and all of 1999 totaling 2 million dollars – this revenue could not possibly have come from the accused websites because they did not even exist.  *See* Revised Schedule 8A, Confidential Exhibit B and Schedule 1, Confidential Exhibit E.

The problem is that Mr. Donaldson did not bother to consider the information AOL provided when forming his opinion regarding damages:

> **Q.**  Do you know if any accused website was in operation in 1998?
> **A.**  No, I do not know.  And I know Mr. Jackson has indicated that it should be 1999, I believe.  And he may have more up-to-date information than I had access to.  And if that's the case, that will be the case.

Donaldson Deposition Tr. at 294:6-11. Confidential Exhibit C.

Mr. Donaldson repeatedly acknowledged the flawed nature of his damages analysis.  *See* Donaldson Deposition Tr. at 292:14-293:17; 323:22-324:6; 325:9-326:1; 326:9-15; 329:24-330:4; 333:3-10, Confidential Exhibit C.  He prepared an expert report without knowledge of the AOL websites accused by Hill (*see* Donaldson Deposition Tr. at 292:7-13, Confidential Exhibit C ), the patent that Hill has accused AOL of infringing (*see* Donaldson Deposition Tr. at 281:14-24, Confidential Exhibit C), and without admittedly understanding AOL's financial data (*see* Donaldson Deposition Tr. 292:14 – 293:7, Confidential Exhibit C).  Rule 702 demands more than that and he should be precluded from testifying regarding damages that Hill accrued during 1999-2001.

8

### 2. Rules 402 & 403 Preclude Mr. Donaldson's Testimony

Finally, Hill's allegations of infringement in this matter are necessarily based on theories of indirect infringement under 35. U.S.C. § 271 (b) and (c). A theory of indirect infringement requires an accused infringer to have, at a minimum, knowledge of the patent at issue.[5]

AOL was not aware of Hill's '649 patent, nor did AOL receive any notice from Hill regarding the patent and Hill's belief that AOL was infringing the patent, until May 17, 2002, based on a letter from Hill's counsel. *See* Letter, Exhibit F. Thus, Hill could not prove any act of indirect infringement by AOL under any circumstances until after May 17, 2002 and, accordingly, no damages can accrue against AOL prior to that date.

Accordingly, Mr. Donaldson should not be permitted to testify about damages accruing prior to May 17, 2002 because it is not relevant to what AOL would owe Hill, and such testimony could be confusing and prejudicial before the jury. This is a separate and independent basis for precluding the testimony of Mr. Donaldson relating to purported damages accruing from 1998 through 2001.

---

[5] *See Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1447 (Fed.Cir.1990) (holding that an accused infringer must know of the patent and the infringement to be liable for contributory infringement); *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F.Supp.2d 1152, 1164 (C.D. Cal. 2001). *See also Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) (under §271(c), a patent owner "must show that [an accused infringer] 'knew that the combination for which its components were especially made was both patented and infringing.'"); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 n.4 (Fed. Cir. 1990) ("§271(c) require[s] not only knowledge that the component was especially made or adapted for a particular use but also knowledge of the patent which proscribed that use."); *Alloc, Inc. v. U.S. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (under §271(b) "a patentee must show that an alleged infringer knowingly induced another to commit an infringing act to establish induced infringement.").

## **CONCLUSION**

For at least the foregoing reasons, Hill's damages expert Mr. Donaldson should be precluded from testifying regarding (1) any damages occurring after 2001 for any of the three websites; (2) damages caused by the purported infringement of www.in-store.com and www.aolshop.com; and (3) damages accruing in years 1998 through 2001.  Thus, at bottom, Hill's damages expert should be precluded from providing any testimony relating to damages caused by AOL's purported infringement.

Dated:   January 20, 2006                                        Respectfully submitted,

By: /s/ Melody A. Habecker___
    Otis W. Carroll, Jr.
    State Bar No. 03895700
    J. Wesley Hill
    State Bar No. 24032294
    IRELAND CARROLL & KELLEY, PC
    6101 S. Broadway, Suite 500
    Tyler, TX  75703
    Telephone:  (903) 561-1600
    Facsimile:    (903) 581-1071
    Email: fedserv@icklaw.com

    Thomas E. O'Connor, Jr.
    toconnor@mwncmh.com
    Mark A. Losey
    mlosey@mwncmh.com
    MCNEES WALLACE & NURICK LLC
    Fifth Third Center, Suite 1700
    21 East State Street
    Columbus, Ohio 43215

    Ruffin B. Cordell
    Michael J. McKeon
    Melody A. Habecker
    FISH & RICHARDSON P.C.
    1425 K Street, N.W.
    Washington, D.C.  20005

Telephone: (202) 783-5070  
Facsimile: (202) 783-2331  
Email: habecker@fr.com  
Counsel for Defendant  
AMERICA ONLINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of January, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail on this same date.

/s/ Melody A. Habecker